[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-15094
Non-Argument Calendar

————————————————

Agency No. A215-735-001

MAEEN UDDIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(October 7, 2020)

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Facing removal from the United States for entering and remaining without authorization, Maeen Uddin, a native and citizen of Bangladesh, applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Uddin claimed that he had twice been physically attacked by members of the ruling Awami League party due to his active membership in an opposition party, and that he feared persecution by the Awami League if he returned to Bangladesh. An Immigration Judge ("IJ") denied his applications and ordered his removal. The IJ determined that Uddin's testimony was not credible for several reasons, including that he was evasive and gave inconsistent answers. Uddin appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's adverse credibility determination and determined that Uddin failed to meet the standard for asylum, withholding of removal, and CAT relief. Uddin now petitions this Court for review of the BIA's decision.

We review only the decision of the BIA, except to the extent that the BIA expressly adopted or agreed with the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). We review the IJ's opinion to the extent that the BIA has found that the IJ's reasons were supported by the record, and we review the BIA's decision with regard to those matters on which it rendered its own opinion and reasoning. *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).

2

Here, we will review both the IJ's and BIA's decisions to the extent of their agreement. *See id.*

We review factual findings, including credibility determinations, under the substantial-evidence test. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254–55 (11th Cir. 2006); *see D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) ("The trier of fact must determine credibility, and [we] may not substitute [our] judgment for that of the BIA with respect to credibility findings."). Review for substantial evidence is deferential and is based on a construction of the record evidence that is most favorable to the agency's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350–51 (11th Cir. 2009). We must affirm the agency's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1351 (quotation marks omitted). Findings of fact may be reversed only if the record compels a different result. *Id.* In other words, the mere fact that the record may support a contrary conclusion is not enough to justify reversal of the agency's findings. *Id.*

A noncitizen applying for asylum must prove, with reliable and specific evidence, that he is a "refugee." 8 U.S.C. § 1158(b)(1)(B)(i); *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). A refugee is someone unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in

a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant must demonstrate that he (1) was persecuted in the past on account of a protected ground or (2) has a well-founded fear that he will be persecuted in the future on account of a protected ground. *Ruiz*, 440 F.3d at 1257. An applicant for withholding of removal must establish similar, but more stringent, requirements. *D-Muhumed*, 388 F.3d at 819. Finally, an applicant seeking protection under CAT must establish that it is more likely than not that he would be tortured by or with the acquiescence of the government if removed. *Id.* at 819–20.

The applicant's credible testimony, standing alone, may be sufficient to meet his burden. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006). But if the applicant is found not credible and has not provided any corroborating evidence, an adverse credibility determination alone may be sufficient to support the denial of his claims for relief from removal. *Forgue*, 401 F.3d at 1287. Nevertheless, where the applicant offers evidence beyond his own testimony, the agency has a duty to consider that other evidence even if it finds that the applicant is not credible. *Id.*

In challenging an adverse credibility finding, the noncitizen bears the burden of showing that it "was not supported by specific, cogent reasons or was not based on substantial evidence." *Id.* (quotation marks omitted). Factors relevant to a credibility determination include, but are not limited to the demeanor, candor, and responsiveness of the applicant; the plausibility of the applicant's account; the

4

consistency between the applicant's written and oral statements; the internal consistency of each statement; and the consistency of the applicant's statements with other record evidence, including country reports.  8 U.S.C. § 1158(b)(1)(B)(iii). Inconsistencies and inaccuracies need not "go[] to the heart of the applicant's claim" to support an adverse credibility finding, *id.*, but they also cannot be "wholly immaterial," *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1305 (11th Cir. 2009). Moreover, because of the deferential standard of review, a reasonable explanation for inconsistencies in the applicant's testimony does not necessarily compel reversal of the IJ's adverse credibility determination.  *Chen*, 463 F.3d at 1233.

The BIA offered two main reasons for agreeing with the IJ's adverse credibility determination: (1) Uddin provided "evasive, vague and internally inconsistent testimony" when questioned about his reasons for obtaining a passport four months before the February 2018 assault that purportedly precipitated his departure from Bangladesh; and (2) Uddin's testimony that he was on a "target list" and feared for his life was vague and equivocal and inconsistent with his decision to depart Bangladesh through ordinary channels using a government-issued passport that bore his name.[1]

---

[1] The BIA disagreed with the IJ's other stated reasons for the adverse credibility determination, but it concluded that the determination was still valid because the IJ otherwise relied on permissible considerations that were supported by the record.

5

Here, Uddin has not shown that the record compels a finding that he provided credible testimony in support of his applications for asylum, withholding of removal, and CAT relief. The BIA offered specific and cogent reasons, supported by substantial evidence, for sustaining the IJ's adverse credibility finding.

As to the first reason, the BIA explained that Uddin, despite being given multiple "opportunities to explain what his reasons were for obtaining a passport," "simply repeated that it was not his intention to leave the country." While Uddin initially stated that he had hired an agent to procure him a passport because he was "having some difficulties at home" or "some problem[s]," he did not explain what these difficulties or problems were in response to questioning by both the government and the IJ. Uddin later asserted that there were "many, many problems . . . going on inside the country," but the only example he cited, though certainly terrible, was the death of a friend in December 2018 that, as the BIA noted, occurred after Uddin had already obtained his passport and left the country. The BIA concluded that this "vacillating and unresponsive" testimony supported the IJ's decision not to credit Uddin's explanations regarding why he obtained a passport months before his alleged February 2018 assault.

Uddin maintains that his testimony on this matter was "consistent and credible" and that people routinely obtain passports for purposes other than when they are preparing to leave their country immediately, such as identification. But in

6

light of Uddin's inability to provide a clear or consistent answer for why he obtained the passport, other than repeatedly insisting that he did not obtain the passport in anticipation of leaving the country, and his invocation of an event that occurred after he had already obtained the passport, we must conclude that the adverse credibility determination was based on specific, cogent reasons and was supported by substantial evidence. *See Forgue*, 401 F.3d at 1287.

As to the second reason, the BIA found that the IJ reasonably doubted Uddin's assertion that he was on a "target list" that subjected him to being killed by the Awami League with the help of the police. Uddin testified the Awami League maintained a "target list" and that individuals on this list were found, abducted, and killed. As the BIA noted, though, Uddin's testimony as to how he came to know about the target list was "very vague and equivocal." Uddin simply stated that "somehow or other we have come to know that this is the system." The BIA further discounted Uddin's testimony on these matters because he had used a government-issued passport in his name to depart Bangladesh through ordinary means in April 2018. The BIA found that this action was inconsistent with his stated fear of being found and killed by the Awami League, who he said had a "very strong connection network" throughout the country and a "direct connection with the police."

Uddin responds that he was "being persecuted by a local organization of the Awami League, which does not necessarily preclude applying for and obtaining a

passport in the usual way." Yet Uddin testified that he was not safe anywhere in the country due to the Awami League's "very strong connection network" "all over the country." In light of Uddin's testimony about the breadth and strength of the Awami League's influence, we cannot conclude it was unreasonable for the BIA and IJ to find his actions in leaving the country somewhat inconsistent with this testimony. So while the record may be viewed to support a contrary conclusion, we cannot say it *compels* a finding that Uddin's testimony on these points was credible. *See Kazemzadeh*, 577 F.3d at 1351.

For these reasons, we conclude that the BIA and IJ offered specific and cogent reasons, supported by substantial evidence, for the adverse credibility finding.

Finally, substantial evidence supports the BIA's finding that Uddin could not sustain his burdens for asylum, withholding of removal, or CAT relief in the absence of credible testimony. *See id.* Without his credible testimony, Uddin cannot show that he was subject to past persecution in Bangladesh. Nor does Uddin appear to contend that his other evidence—consisting of letters and affidavits from family, friends, and members of his party, among others—independently established a well-founded fear of future persecution or otherwise met his burden for relief from removal. Rather, Uddin continues to rely on his testimony in arguing that he established eligibility for asylum and entitlement to withholding of removal and CAT relief. We therefore defer to the BIA's conclusion on these matters.

8

In sum, we deny Uddin's petition for review.

**PETITION DENIED.**